**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

CATALINA CARRIÓN,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner Social Security
Defendant.

CIVIL NO.  25-1358 (HRV)

**OPINION AND ORDER[1]**

Catalina Carrión (hereinafter "Plaintiff" or "Ms. Carrión") seeks review of the final administrative decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability benefits under the Social Security Act ("the Act"). The Commissioner filed his brief arguing that the decision should be affirmed because it is based on substantial evidence. After careful consideration of the record, and for the reasons outlined below, the Commissioner's decision is AFFIRMED.

## I.    LEGAL FRAMEWORK

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), any individual may obtain review of a final decision of the Commissioner. Under said statutory provision, the Court is empowered

---

[1]    José Font-Bula, a third-year law student at the University of Puerto Rico School of Law, provided significant assistance in the research and drafting of this Opinion and Order.

"to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." *Id.* In addition, the statute provides that if supported by substantial evidence, the findings of the Commissioner as to any fact, shall be conclusive. *Id.*

A reviewing Court must uphold the decision of the Commissioner as long as the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is thus limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the reviewing court is persuaded that it contains sufficient evidence to support the Commissioner's factual determinations, the decision is bound to be upheld. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed, however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B.    The Five-Step Sequential Evaluation Process**

To be eligible for social security benefits, a claimant must demonstrate that he or she is "disabled" within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The Act defines disability, in pertinent part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). The impairment or impairments must be severe enough that "he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists [in significant numbers] in the national economy...." *Id.*, § 423(d)(2), § 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1520(a)(1).

The Commissioner follows a five-step evaluation process to determine disability. *See Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); 20 C.F.R. § 404.1520(a). These steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id.* The Plaintiff has the burden of proof at the first four steps of the process. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

Step one considers work activity, that is, whether Plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the person is, then she is not disabled under the Act. *Id.*  Step two asks whether Plaintiff has a physical or mental impairment, or a combination of impairments, that is severe and meets the Act's duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). Step three considers the medical severity of the Plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At this step, if Plaintiff is determined to have an impairment that meets or equals an impairment listed

in 20 C.F.R. pt. 404, Subpt. P., app. 1, and meets the duration requirements, she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). On the other hand, if the Plaintiff is not found to be disabled at this step, her Residual Functional Capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC, the inquiry proceeds to step four. Step four compares Plaintiff's RFC to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the Plaintiff can still perform her past relevant work, she is not disabled. *Id.* Finally, at step five, the Plaintiff's RFC is considered alongside her "age, education, and work experience to see if [she] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If she can make an adjustment to other work, she is not disabled; if she cannot, she is disabled. *Id.* At this step, it is the Commissioner who has the burden "to come forward with evidence of specific jobs in the national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d at 608 (*citing Arocho v. Sec'y of Health & Human. Servs.*, 670 F.2d 374, 375 (1st Cir. 1982)).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff applied for disability and disability insurance benefits on May 24, 2022, alleging that her disability began on December 31, 2017. Plaintiff later amended the alleged onset date to April 14, 2021. *See* Transcript of Social Security Proceedings ("Tr."), Docket No. 14 at 28. (Tr. 23). The claim was initially denied on September 21, 2022, and on reconsideration on March 31, 2023. (*Id.*).

On April 19, 2023, Plaintiff moved for a hearing, and on October 13, 2023, a hearing presided by ALJ Luciannette Planas was held. At the hearing, Ms. Carrión was represented by attorney Gloria Estremera Ríos, who waived the right to a fee, on behalf of her main representative of record, and attorney Vivian Paulette Lartigaut-Benitez.

(*Id.*). Impartial vocational expert Pedro Román testified via telephone. (*Id.*). Additional written evidence was submitted by Ms. Carrión prior to the hearing, and it was admitted into evidence as part of the record. (*Id.*). I briefly summarize below the ALJ's written decision dated March 25, 2024.

The ALJ determined at Step One of the five-step sequential process that Ms. Carrión did not engage in substantial gainful activity since the alleged onset date, that is, April 14, 2021. (Tr. 26). At Step Two, the ALJ found that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, obstructive sleep apnea, sleep related hypoxemia, severe obstructive airways disease and restriction, bilateral knee osteoarthritis, bilateral foot calcaneal spur, idiopathic thrombocytopenic purpura, obesity, major depressive disorder, anxiety disorder, mild intellectual disability, and mild cognitive impairment. (*Id.*).

With respect to Step Three, the ALJ concluded that Ms. Carrión did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically listing 1.18, 11.4, 3.00, 3.00P, 3.02, 7.0(D), and 7.08 (Tr. 27-31). For this finding, the ALJ concluded that the record did not establish medical signs, laboratory findings, or degree of functional limitation required to meet or equal the criteria. (Tr.28-29). She considered Ms. Carrion's alleged physical impairments, but found that "despite the severity, the degree of limitations caused by the Plaintiff's physical conditions does not preclude all work activity." (Tr. 36).

As to Ms. Carrión's mental impairments, the ALJ determined that she did not meet or medically equal the criteria in listings 12.04, 12.05, and 12.06. In so finding, the

ALJ considered if Paragraph B criteria was satisfied. To satisfy "Paragraph B" criteria, the mental impairment must result in one extreme limitation [2] or two marked limitations[3] in a broad area of functioning. (Tr. 33). The ALJ assessed moderate and mild limitations in the four relevant areas; none of Plaintiff's mental impairments caused two "marked" limitations or one "extreme" limitation. (Tr. 29).

For instance, in understanding, remembering or applying information, the ALJ found Plaintiff has a moderate limitation. Ms. Carrion did not report any difficulties with her memory, and, during a mental status examination, she was found with preserved immediate, recent and remote memory. Further, Ms. Carrion stated she did not need reminders to take care of her personal appearance and hygiene, or to take her medications. She also acknowledged being able to prepare meals, perform household chores, drive, shop, go out unaccompanied, and pay bills, among others. (Tr. 28, 541-543).

With respect to the area of interacting with others, the ALJ likewise assessed a moderate limitation. Ms. Carrión did not report difficulties getting along with others such as live-in family members, friends, neighbors or authority figures. (Tr. 28). She recognized being able to socialize, have conversations in person, and attend church. (Id.). Similarly, Ms. Carrion denied ever having issues with supervisors and co-workers. (Tr. 28-29). Furthermore, a consulting psychiatrist also reported Plaintiff had normal

---

[2]    An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. pt. 404, subpt. P. app 1.

[3]    A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.*

thought process and speech characteristics as well as good contact with reality. (Tr. 29). A consulting psychologist found Ms. Carrion capable of engaging in some social interaction. (Id.).

As to Ms. Carrión's ability to concentrate, persist, or maintain pace, the ALJ found she had a mild limitation. While Plaintiff claimed to have difficulties concentrating and completing tasks, she acknowledged, among other things, being able to follow written and spoken instructions. And as previously mentioned, the record also showed according to the ALJ, that she can prepare meals, perform some indoor household chores, drive, shop personally in stores, attend church twice per week, manage a savings account and pay bills. (Id.). Ms. Carrión was found with adequate and consistent attention during her mental consultative examination. (Id.).

Lastly, in the area of adapting and managing oneself, the ALJ also assessed a mild limitation. Plaintiff acknowledged being able to perform activities of daily living tending to suggest that she can live independently. (Id.). Further, she was found to have normal thought organization; pleasant and spontaneous speech; and good contact with reality. Examinations showed that although Ms. Carrión had diminished short-term memory, she was oriented and had preserved immediate, recent, and remote memory (Tr. 29, 33). She also exhibited appropriate general knowledge, good insight and judgment, normal movement and visual contact, and capacity to establish rapport. (Tr. 29, 745-746).

The ALJ also evaluated the three elements outlined in listing 12.05 that characterize intellectual disorder: significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22. The required level of severity is met when the requirements in

paragraphs A or B are satisfied. But the ALJ concluded that the requirements of these Paragraphs were not met. (Tr. 30-31). Thus, while Ms. Carrión does have a mild cognitive impairment/mild intellectual disability, these impairments did not meet or equal listing 12.05. (Tr. 31).

Next, and prior to moving to Step Four of the sequential process, the ALJ concluded that Plaintiff had an RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently; sitting for six hours, standing and/or walking for two hours. The claimant can push and pull as much weight as she can lift and carry. The claimant has the residual functional capacity to perform manipulative work-related tasks that involve frequently reaching overhead to the left and/or to the right. She can handle items frequently with the left hand and/or with the right hand. She has fingering limitations frequently with the left hand and/or frequently with the right hand. The claimant can climb ladders, ropes, or scaffolds occasionally, stoop occasionally, kneel frequently, crouch frequently, and crawl frequently. The claimant can work at unprotected heights occasionally, never moving mechanical parts and frequently can work operating a motor vehicle. The claimant retains the capacity to understand, remember and carry out simple instructions. She can use judgment limited to perform simple work-related decisions and is limited to deal with occasional changes in a routine work setting. The claimant can frequently interact with supervisors, coworkers, and the general public.

(Tr. 31).

In addition, the ALJ explained that in determining the RFC, she considered all of Plaintiff's symptoms to the extent they can reasonably be accepted as consistent with the objective medical evidence as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p, as well as medical opinions and prior administrative medical findings as mandated by 20 C.F.R. § 404.1520c. (Id.). In following the required two-step

process (first determining if the physical or mental impairments could reasonably be expected to produce the pain and/or symptoms alleged, and, second, evaluating the intensity, persistence, and limiting effects of said symptoms to determine the extent to which they limit Plaintiff's work-related activities), the ALJ concluded after a thorough and detailed explanation (Tr. 31-39), that the RFC assessed for Ms. Carrión was supported by the objective medical evidence and opinions that form part of the record. (Tr. 39). Furthermore, the ALJ concluded that Plaintiff's own reports regarding her symptom and functioning—for instance—that she was able to prepare meals, perform some household chores, drive short distances, personally shop in stores, manage funds, pay bills, watch TV, read the Bible, spend time with family, attend church, all pointed toward a capacity to perform work within the RFC determined. (Tr. 32, 39.).

The ALJ then found that Ms. Carrión does not have any past relevant work (Step Four), and that considering her age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy she could perform (Step Five), such as Charge-Account Clerk, Document Preparer, and Telephone Quotation Clerk. (Tr. 40-41). Accordingly, the ALJ held that Ms. Carrión was not disabled under the Act. (Tr.41).

On May 8, 2024, Plaintiff sought review of the ALJ's decision before the Appeals Council. On June 4, 2025, the Appeals Council denied her request for review. (Tr. 1-9). On that date, the ALJ's decision became the Commissioner's final decision. On July 7, 2025, Ms. Carrión filed both an application to proceed *in forma pauperis* and her social security complaint before this Court. (Docket Nos. 1 and 2). On July 8, 2025, the presiding District Judge granted her leave to proceed *in forma pauperis* (Docket No. 7)

and, on the same date, ordered the Clerk of Court to appoint counsel from the pro bono panel. (Docket No. 6). Attorney Edraul Colón was appointed. (Docket No. 8).

On August 6, 2025, the Attorney Edraul Colón filed a Motion Requesting Relief from Pro Bono Counsel Appointment (Docket No.11), which was granted on August 7, 2025. (Docket No. 12). On August 8, 2025, Attorney David Luis Torres-Vélez, also from the pro bono panel, was appointed to represent Ms. Carrión. (Docket No. 13). On October 29, 2025, this case was formally referred to the undersigned for all further proceedings, including the entry of judgment. (Docket No. 18). Plaintiff's social security brief was filed on December 5, 2025 (Docket No. 24), and the Commissioner's on January 14, 2026. (Docket No. 28). Plaintiff filed her reply brief on January 28, 2026. (Docket No. 29).

### III.    DISCUSSION

Ms. Carrión argues that the ALJ erred in her RFC assessment. Specifically, Plaintiff takes aim at the ALJ's interpretation of the medical evidence, and the conclusions reached to formulate the RFC, in which the ALJ found that Plaintiff could perform sedentary work. She claims that the ALJ issued the RFC based on an improper lay assessment of the raw medical evidence and without providing a sufficient explanation for some of the conclusions reached (Issue 1). She also states that the ALJ erred in rejecting Dr. Víctor Mariano-Mercedes' ("Dr. Mariano-Mercedes") opinion. (Issue 2). Lastly, Plaintiff challenges the ALJ's finding at Step Five regarding the jobs that she can perform given her RFC. (Issue 3).[4]

---

[4]    This issue has been formally withdrawn in Plaintiff's reply brief. (Docket. No. 29 at 1). As such, I do not address it.

The Commissioner responds that substantial evidence supports the RFC assessment and that an adequate explanation was offered for her findings and conclusions. The Commissioner's position is that the ALJ assessed greater RFC limitations than state agency consultants. The Commissioner also states that the ALJ complied with regulations by articulating how persuasive she found Dr. Mariano Mercedes' opinion and expressly discussed the regulatory factors of supportability and consistency. I will discuss the two issues in turn.

### A. The RFC determination is supported by substantial evidence and the ALJ's explanation is adequate.

Plaintiff claims that the ALJ based her RFC determination on an improper lay evaluation of the medical evidence and did not base her determination on substantial evidence because she rejected all medical source opinions, either explicitly or implicitly. According to Plaintiff, the ALJ erred when she referenced in her decision, at Tr. 39, that prior administrative findings opined that she could perform sedentary work. She says that the prior opinions cited (Exhibits 2A and 4A) found ability to perform "light" exertional work, with the capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, and stand, walk, or sit six hours each in an eight-hour workday. (Docket No. 24 at 7). Thus, in finding that Ms. Carrion could perform a reduced range of sedentary work, the ALJ erroneously gave the impression that she was crediting the opinions of the consultants when she was in fact rejecting them. (Id.). It is also alleged that the ALJ's explanation regarding the basis for her RFC determination is faulty, particularly with respect to the limitations imposed by Plaintiff's obesity.

The Commissioner contends that the ALJ relied on the medical sources and opinions but gave Ms. Carrión the "benefit of the doubt and assessed a slightly more limited RFC." (Docket No. 28 at 4). Ultimately, the Commissioner stresses, the ALJ found a more limited RFC than that assessed by the state agency consultants; however, that does not make the RFC unsupported. With respect to the explanation offered by the ALJ, the Commissioner points to the substantial medical evidence discussed in the opinion to arrive at the RFC findings as well as the ALJ's discussion of the impact of Plaintiff's obesity in said RFC assessment. I agree with the Commissioner on both counts.

The ALJ thoroughly outlined the medical evidence as well as Plaintiff's subjective complaints. And in doing so, the ALJ determined that Ms. Carrion indeed suffers from a number of physical and mental impairments. Plaintiff takes issue with the degree of severity assigned to said impairments *vis à vis* her RFC. Despite Plaintiff's severe physical and mental impairments, the record demonstrates a conservative treatment approach, such as the treatment provided for right shoulder humeral head calcified cyst, bilateral plantar fasciitis, minimal thoracic levoscoliosis with vertebral osteophytes, hyperlipidemia, hepatosplenomegaly (enlarged liver), cholelithiasis, and gallbladder polyp. (Tr. 26, 601, 697, 709-724, 727-740, 755-756, 768). The record also shows that the treatment for Ms. Carrión's congenital suprarenal hyperplasia—a daily dose of Prednisone—has kept this condition under control and does not impose any physical limitation. (Tr. 26-27, 617). For Plaintiff's bilateral carpal tunnel syndrome, she has been treated with physical therapy, also demonstrating a conservative treatment approach. (Tr. 37, 648-674, 736-741). For her respiratory conditions, such as obstructive sleep apnea, sleep related hypoxemia, and severe obstructive airways disease and restriction,

Ms. Carrión's treatment plan consisted of a Continuous Positive Airway Pressure (commonly known as "CPAP") full face mask machine, weight loss, and sleep hygiene measures, (Tr. 37, 652-640); this too, being a conservative treatment regimen. Such treatments have allowed Ms. Carrión to complete her daily activities, maintain a good relationship with her family, take care of her personal hygiene and appearance, driving, and attending church. (Docket No. 28 at 5).

The ALJ also based her RFC findings on the consultative examination of Dr. Efraín Carrasquillo in which results were unremarkable. Among these results were: normal bilateral upper and lower extremities inspection and palpitation, intact sensation, no atrophy, complete (5/5) bilateral muscular strength and functioning in all extremities, and negative Tinel, Phalen, and special knee tests bilaterally as well. Ms. Carrión was able to grip, grasp, pinch, finger tap and opposition, button a shirt, and pick up a coin with both hands, she also demonstrated normal gait, strength, sensation, gripping, grasping, pinching, range of motion (except for a slight reduction in the back), and negative straight leg raising were found. (Tr. 36, 679-687). Additionally, all x-rays, other imaging, and testing showed no new or remarkable findings. (Tr. 36-38). The ALJ also noted how unpersuasive Dr. Eduardo Umpierre-Vela's findings were regarding Plaintiff's complete inability to work. Dr. Umpierre-Vela's own clinical findings, progress notes, and treatment records did not support his conclusion. (Tr. 38, 675).

Contrary to Plaintiff's argument, the above-outlined and detailed description of the medical evidence in the record, including consideration of Plaintiff's subjective complaints, supports the ALJ's conclusion that Plaintiff's physical and mental impairments could reasonably result in some functional restrictions but were not

13

profoundly limiting. Treatment for said conditions commenced after the alleged onset date and was, again, conservative in nature. Plaintiff did not require substantial physical therapy, pain management treatment, or any kind of orthopedic treatment, let alone surgery or hospitalizations.

Therefore, I find that the record amply demonstrates the ALJ relied on several medical sources to formulate Plaintiff's physical and mental RFC, including the opinions of state agency medical consultants, and correctly found Ms. Carrión could perform sedentary work. The claim that the ALJ engaged in improper lay evaluation of the raw medical evidence is, thus, unavailing. And, as the Commissioner correctly points out, the ALJ accepted these opinions only partially (mindful of the incorrect reference to sedentary as opposed to light work)[5] because the ALJ found—favorably to Plaintiff—that a more restrictive RFC assessment was warranted. *See Smith v. Berryhill*, 370 F. Supp. 3d 282, 289 (D. Mass. 2019) (noting that Plaintiff failed to specify how she was prejudiced by a more restrictive RFC.). Given the substantial evidence standard, this conclusion can hardly be deemed error. *See Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018); *see also Berrios-Lopez v. Secretary of HHS*, 951 F.2d 427, 429 (1st Cir. 1991).

I also reject Plaintiff's claim that the ALJ provided an insufficient explanation for the RFC. A cursory review of the ALJ's opinion belies the assertion. And as to obesity, the ALJ specifically noted:

---

[5]    To the extent the reference to the state agency consultants' conclusions was a substantive rather than a scrivener's error, the ultimate conclusion remains: substantial evidence supports a finding that Plaintiff has the RFC to perform sedentary work.

> It is very likely that the claimant's obesity contributes to any breathing difficulties, as well as to the pain and limitation of movement and activity the claimant experiences from her other physical impairments, and this impact has also been considered in assessing the above residual functional capacity.

(Tr. 38). The ALJ was entitled to, and in fact relied on, findings of state agency medical consultants who also considered Ms. Carrión's obesity. No more was needed. *See Amanda C. v. Saul*, No. 19-00539-JAW, 2020 WL 5106744, 2020 U.S. Dist. LEXIS 158151, at *8 (D. Me. Aug. 31, 2020) (finding that the ALJ's assessment as to claimant's obesity and its impact on the RFC was consistent with and supported by the experts whom the ALJ found persuasive.); *see also Garcia-Luciano v. Comm'r of Soc. Sec.*, No. 23-cv-1236 (HRV), 2024 WL 396676, 2024 U.S. Dist. LEXIS 22026, at *11 (D.P.R. Feb. 2, 2024) (finding that the ALJ took into consideration Plaintiff's obesity and adjusted the physical limitations in the RFC accordingly.).

**B.   The ALJ's rejection of Dr. Mariano-Mercede's opinion as unpersuasive does not warrant remand.**

Ms. Carrión argues that the ALJ failed to sufficiently explain in her written decision why she found unpersuasive Dr. Mariano-Mercedes' opinion. (Docket No. 24 at 11). Further, Plaintiff contends that the ALJ failed to analyze the relevant factors that the regulations required her to consider. In her view, the ALJ's rejection of Dr. Mariano-Mercedes' finding of "mild cognitive impairment" as unpersuasive while accepting, in turn, Dr. Ángel Ayala-Sánchez's finding of "mild intellectual disabilities" is inconsistent and therefore warrants a remand for further evaluation. (Docket No. 25 at 11-12). The Commissioner ripostes that the ALJ complied with regulations by articulating how persuasive she found Dr. Mariano-Mercedes' opinion. It further argues that just because

15

a test supports a diagnosis, it does not mean that it supports the opinion that Plaintiff should not work because she cannot tolerate stress, focus or complete a normal workday. (Tr. 262, 771).

The rule is that when considering medical opinions, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, to determine the persuasiveness of a medical opinion, an ALJ considers five factors: supportability, consistency with other medical sources, relationship with the claimant, specialization, and "[o]ther factors." 20 C.F.R. § 404.1520c(c). The most important of these factors are supportability and consistency and the ALJ is only required to articulate how she considered these two factors in her decision. 20 C.F.R. § 404.1520c(b)(2); *see also Albro v. O'Malley,* 740 F. Supp. 3d 26, 37 (D. Mass. 2024); *Cross v. O'Malley*, 89 F.4th 1211, 1215 (9th Cir. 2024) ("The 2017 regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinion . . . ."). It has been clarified that "the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions'") (alterations in original) (quoting 20 C.F.R. § 416.920c(a), (b)(1))." *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 161 (S.D.N.Y. 2022).

A medical opinion will be considered supportable when the objective evidence and supportive explanations are relevant to support the professional's opinion. 20 C.F.R. § 404.1520c(1). "The more relevant objective medical evidence and **supporting**

**evidence** presented by a medical source to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). On the other hand, a medical opinion will be considered consistent when other medical sources and evidence support said opinion, making it more persuasive. *See* 20 C.F.R. § 404.1520c(2); *see also Delgadillo v. Comm'r of SSA*, 641 F. Supp. 3d 663, 669 (D. Ariz. 2022).

Here, the ALJ underscored that her determination was based on her finding that the opinion of Dr. Mariano-Mercedes, included in his psychiatric medical report, was not consistent with his own treatment notes, consisted of check marks, and more importantly, there were no progress notes or reports. (Tr. 35, 47-74). The Commissioner emphasizes that the rejection of Dr. Mariano-Mercedes' opinion as unpersuasive because it was both unsupported for the above-mentioned documentation shortcomings and inconsistent with the assessments of Dr. Rodriguez and Dr. Ayala-Sánchez. (Docket No. 25 at 7). It should be noted that the ALJ listed both "mild intellectual disability" and "mild cognitive impairment" as severe impairments. (Tr. 26). Nevertheless, I agree with the Commissioner that the existence of a diagnosis of a mild intellectual disability or mild cognitive impairment for that matter, does not, standing alone, support the opinion that Ms. Carrión cannot work. (Id.). This is so because "[i]t is not enough for Plaintiff to be diagnosed with certain impairments: Plaintiff must provide evidence that these impairments 'significantly limit[] [her] physical or mental ability to do basic work activities.'" *Andrew v. Kijakazi*, 594 F. Supp. 3d 163, 170 (D. Mass. 2022) (quoting *Grady v. Astrue*, 894 F. Supp. 2d 131, 141 (D. Mass. 2012)); *see also Mateo-Rivera v. Comm'r of Soc. Sec.*, No. 19-1301, 2020 WL 7786920, at *6 (D.P.R. Dec. 30, 2020) ("A mental

health diagnosis and evidence of treatment are insufficient alone to establish a severe impairment."). This alleged error was not committed and remand is not warranted.

## IV.    CONCLUSION

In light of the forgoing, the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 16th day of June 2026.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
